STATE OF NORTH CAROLINA v. JOHN BRYANT DAVIDSON

No. COA97-1353

(Filed 3 November 1998)

**1. Search and Seizure— warrant—time of execution—bank records—not produced within 48 hours**

The trial court did not err in a prosecution for securities fraud by denying defendant's motion to suppress bank records seized via a search warrant where the warrant was issued on 22 April and served on the bank on 23 April, but the Investigator did not begin receiving the records until 6 May. Although defendant contends that the warrant was not executed within the forty-eight-hour period required by N.C.G.S. § 15A-248, defendant failed to show that the failure to produce the documents within forty-eight hours constitutes a substantial violation within the meaning of N.C.G.S. § 15A-974 and failed to show prejudice.

**2. Crimes, Other— securities fraud—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss charges of securities fraud under N.C.G.S. § 78A-8(2) and N.C.G.S. § 78A-8(3) for insufficient evidence. Defendant's failure to tell two investors that he would be using their funds to trade stock options after promising to invest their funds at a fixed interest rate constituted an untrue statement of material fact and an omission of a material fact necessary to not misleading investors under N.C.G.S. § 78A-8(2). Defendant's continuing misrepresentation of his employment is encompassed by N.C.G.S. § 78A-8(3)'s broad definition.

**3. Criminal Law— additional argument refused— additional instructions mere clarification**

The trial court did not abuse its discretion in a prosecution for securities fraud by denying defendant's request to further argue to the jury after the trial court gave additional instructions. The court merely clarified an earlier instruction and no additional instructions were given, so that allowing additional argument was within the discretion of the court.

Appeal by defendant from judgment entered 27 June 1997 by Judge Marcus L. Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 August 1998.

*Attorney General Michael F. Easley, by Assistant Attorney General Christopher E. Allen, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Phillip D. Harward, for defendant-appellant.*

WALKER, Judge.

Defendant was charged in a bill of indictment with two counts of securities fraud under N.C. Gen. Stat. § 78A-8(2) (omission of a material fact) and two counts of securities fraud under N.C. Gen. Stat. § 78A-8(3) (engaging in an act, practice, or course of business that operates as a fraud). The jury convicted him on all four counts of securities fraud and he was sentenced to four concurrent nine-year terms of imprisonment.

The State's evidence tended to show that defendant worked as a stock broker at Capital Investment Group until January 1994. On 21 September 1993, defendant opened a checking account in the name of Union Assurance which was not registered as a corporation or as a partnership authorized to deal in securities in North Carolina nor was it registered in Florida where defendant provided an address for the company. From December 1993 to February 1994, defendant solicited funds from Robert Jackson and Rufus Plonk, two of his established Capital Investment Group clients. Defendant convinced both Jackson and Plonk to liquidate funds from their accounts with Capital Investment Group and he placed those funds in the Union Assurance checking account in the Bank of Union in Monroe, North Carolina. Both Jackson and Plonk testified that defendant represented to them that in exchange for the investment, they would receive a high fixed rate of interest. As a result, Jackson invested a total of $296,000 and Plonk invested $50,000 in what they understood were investments paying a fixed interest rate.

The defendant opened an E-trade brokerage account on 30 September 1993 in the name of Union Assurance with J.B. Oxford & Company, formerly known as RKS, Inc. (RKS), which allowed defendant to trade securities via computer. He traded under this brokerage account until 30 December 1994. On 10 October 1994, defendant opened a second E-trade account in the name of Union Assurance with Herzog, Heine and Geduld, Inc. (Herzog). He traded under this account until 27 October 1995. Through the RKS and Herzog accounts, defendant traded exclusively in "put" and "call" stock

options.[1] In total, over $600,000, which included the funds of Jackson and Plonk, was deposited into the Union Assurance checking account. Some $370,000 of those funds was used by defendant to trade stock options with the remaining funds being used by defendant for his personal use.

Investigator Elizabeth Powell of the North Carolina Secretary of State's Office of Securities Enforcement and Richard Bryant, president of Capital Investment Group, both testified that the National Association of Securities Dealers (NASD) requires brokers to execute separate contracts with clients explaining the excessive risks of options trading before any such trades are made. Neither Jackson nor Plonk ever agreed orally or in writing for the defendant to use his funds to trade in stock options.

Bryant testified further that after defendant left Capital Investment Group in January 1994, he no longer had the authority to use its name, a substantially similar name, or any letterhead labeled with its name or a similar name in communications with clients.

Jackson is an elderly man confined to a wheelchair who testified that he was trustee of a trust for his nephew and had known defendant since March 1992 when he first opened an investment management account with defendant. He further testified that he had relied completely on defendant for investment advice since opening that account, but to the best of his knowledge, defendant had never engaged in options trading on his behalf. After defendant convinced Jackson to liquidate his Capital Investment Group investment management account in favor of a high fixed interest rate account with Union Assurance, Jackson endorsed checks totaling $296,000 over to Union Assurance in February 1994.

After endorsing the checks, Jackson heard nothing more from defendant until June 1995, when he called defendant to complain that he had not received any statements or a prospectus about the fixed interest rate investment which he had requested. As a result of this call, Jackson received a statement on Union Assurance stationery the following week which indicated that his funds were invested at the fixed rate of 8.15% interest and that his balance in the account was

---

1. A "put" is an option permitting its holder to sell a stated quantity of a certain stock or commodity at a fixed price within a stated period of time. *Black's Law Dictionary* 1237 (6th ed. 1990). The holder of a "put" expects the price of the stock to fall so that he can sell the stock or commodity at a profit. *Id.* A "call" allows its holder to purchase at a fixed price. The holder expects the price to rise in order to profit. *Id.* at 204.

**STATE v. DAVIDSON**

[131 N.C. App. 276 (1998)]

$326,884.88 including accrued interest. Thereafter, no other statements were received.

In August 1995, Jackson called to withdraw some of the funds but was informed by defendant that he could not get any of his money until February 1996. Soon thereafter, Jackson received a letter from defendant on a letterhead labeled "Capital Group" even though defendant had left Capital Investment Group in January 1994. Jackson testified that throughout the time he was involved with defendant he understood that Union Assurance was a division of Capital Investment Group where the defendant was still employed. On 17 June 1996, Jackson sent a letter to defendant at Union Assurance's address in Florida requesting that his account be closed; however, he never received a response. Later, he called a telephone number given to him by defendant but found it had been disconnected. Jackson did not recover any of his $296,000 or the interest promised him.

Plonk, a retiree who relied on his investments for income, testified that he had known defendant since the late 1970s and that defendant had provided investment services for him including some "put" options trading during the 1980s. Plonk testified that he would have refused to invest the money had defendant told him that it would be used to trade options because he had lost money on the previous transactions.

In December 1993, Plonk withdrew $50,000 from his Capital Investment Group account, endorsed the check over to the defendant, and received a "guaranteed interest rate certificate" on Capital Investment Group letterhead noting that it was to be invested at 7.85% interest payable quarterly. Plonk testified further that defendant had told him the investment "was in the form of an investment house that placed pension money out for interest," that most of the investments were in England, and that the investment guaranteed a fixed interest rate. Plonk first heard of Union Assurance when he began receiving his quarterly interest checks and noticed the name on the checks.

In June 1995, when the second quarter interest payment was credited to his principal rather than paid to him directly, Plonk contacted defendant seeking a refund of his money. He spoke with defendant a number of times and eventually received the interest payment for the second quarter; however, he received no more interest payments. Thereafter, as a result of the investigation by the Securities

Enforcement section, he learned that there were no funds remaining in the Union Assurance account. Plonk did not recover any of his $50,000 or any of the interest promised him after the second quarter of 1995.

Jackson and Plonk testified that defendant failed to inform them that he would be using the funds to trade in stock options or for his personal use.

The Securities Enforcement section began investigating Union Assurance and defendant in late 1995. As part of the investigation, Investigator Powell applied for and was issued a search warrant to obtain the bank records of Union Assurance held by the Bank of Union. The warrant was issued on 22 April 1996 in Wake County by Superior Court Judge E. Lynn Johnson. Investigator Powell gave the warrant to Investigator John Curry who, on 23 April 1996, delivered the warrant to the Monroe Police Department. Monroe police officers served the warrant on the Bank of Union on 23 April 1996, leaving a copy with the branch manager, Linda Thomas and returning the original to the Clerk of Court's Office. Investigator Powell testified that she received some of the records from the bank on 6 May 1996, with the remainder of the records arriving shortly thereafter.

[1] Defendant first contends that the trial court erred in denying his motion to suppress the bank records obtained via the search warrant issued 22 April 1996. Defendant argues that because the warrant was issued on 22 April 1996, but the records were not received by Investigator Powell until 6 May 1996, the warrant was not executed within the forty-eight hour period as required by N.C. Gen. Stat. § 15A-248 which provides:

A search warrant must be executed within 48 hours from the time of issuance. Any warrant not executed within that time limit is void and must be marked "not executed" and returned without unnecessary delay to the clerk of the issuing court.

N.C. Gen. Stat. § 15A-248 (1997).

The suppression of unlawfully obtained evidence is dictated by N.C. Gen. Stat. § 15A-974 which states:

Upon timely motion, evidence must be suppressed if:

(1) Its exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina; or

(2) It is obtained as a result of a substantial violation of the provisions of this Chapter. In determining whether a violation is substantial, the court must consider all the circumstances, including:

   a. The importance of the particular interest violated;

   b. The extent of the deviation from lawful conduct;

   c. The extent to which the violation was willful;

   d. The extent to which exclusion will tend to deter future violations of this Chapter.

N.C. Gen. Stat. § 15A-974 (1997). The trial court found that there was no willful violation of any constitutional provision or of Chapter 15A and that the deviation from the statute was so minor that no prejudice would result to defendant.

Defendant attempts to distinguish *State v. Dobbins* by asserting that the case focused on the single issue of the unsworn return of service for a search warrant which the Supreme Court held was not a substantial violation of N.C. Gen. Stat. § 15A-257. *State v. Dobbins*, 306 N.C. 342, 293 S.E.2d 162 (1982). Likewise, this Court in *State v. Fruitt* held that the failure to read a search warrant before entering an outbuilding and failure to leave a copy of the warrant and inventory of items seized at the premises in violation of N.C. Gen. Stat. §§ 15A-252 and 254 did not amount to a substantial violation. *State v. Fruitt*, 35 N.C. App. 177, 241 S.E.2d 125 (1978).

Here the search warrant was served and returned within the statutory period, but the delay in receiving the documents resulted from the need to locate and collect those to be seized. The defendant fails to cite any authority to support his contention that the failure to produce the documents to be seized under the search warrant within forty-eight hours constitutes a substantial violation within the meaning of N.C. Gen. Stat. § 15A-974. Further, he has failed to show prejudice as a result of the trial court's denial of his motion to suppress the bank records. Even where a substantial violation has occurred, evidence will only be suppressed where there is a causal connection between the violation and the evidence obtained. *State v. Richardson*, 295 N.C. 309, 245 S.E.2d 754 (1978); *State v. Vick*, 130 N.C. App. 207, 502 S.E.2d 871 (1998). "(I)f the challenged evidence would have been obtained regardless of (the) violation . . ., such evidence has not been obtained 'as a result of' such official illegality and

is not, therefore, to be suppressed by reason of G.S. 15A-974(2)." *Id.* As in *Dobbins* and *Fruitt*, we conclude that the failure to receive the documents to be seized under the search warrant does not amount to a substantial violation of N.C. Gen. Stat. § 15A-974. Therefore, defendant's first argument is without merit.

**[2]** Next, defendant assigns as error the trial court's denial of his motion to dismiss the charges because of insufficient evidence. Specifically, defendant argues that his options trading was insufficient to meet the "security requirement of the statute" and that the State failed to present evidence which establishes a "nexus" between defendant's options trading and any misrepresentation, fraud, or deceit against Plonk and Jackson.

In ruling on a motion to dismiss for insufficient evidence, "the trial court must consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom." *State v. Elliott*, 344 N.C. 242, 266, 475 S.E.2d 202, 212 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 312 (1997). However, substantial evidence must exist to show the essential elements of the crime charged and that the defendant was the perpetrator of the crime. *Id.* at 266-67, 475 S.E.2d at 212.

Defendant was charged under N.C. Gen. Stat. § 78A-8 which states:

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(1) To employ any device, scheme, or artifice to defraud,

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading or,

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

N.C. Gen. Stat. § 78A-8 (1997).

N.C. Gen. Stat. § 78A-8 closely parallels the Rule 10b-5 antifraud provision of the Securities Exchange Act. *State v. Williams*, 98 N.C. App. 274, 390 S.E.2d 746, *disc. review denied*, 327 N.C. 144, 394 S.E.2d 184 (1990). Cases construing the federal rule are instructive

STATE v. DAVIDSON

[131 N.C. App. 276 (1998)]

when examining our statute. It is well settled that stock options fall within the definition of "security" found in 15 U.S.C. § 78c(a)(10) of the Securities Exchange Act. *Fry v. UAL Corp.*, 84 F.3d 936 (7th Cir. 1996). Similarly, stock options are securities as defined by N.C. Gen. Stat. § 78A-2(11) (1997). *See State v. Clemmons*, 111 N.C. App. 569, 433 S.E.2d 748 (1993) (where defendant failed to purchase stock options as promised and therefore did not purchase or attempt to purchase a "security"). Thus, the "security" requirement of N.C. Gen. Stat. § 78A-8 is met where the fraud or misrepresentation is directly or indirectly connected to the offer, sale, or purchase of stock options.

The State's evidence tended to show that defendant solicited funds from both Plonk and Jackson promising an investment which provided a fixed rate of interest. Rather than invest those funds as agreed, he deposited them into a checking account and proceeded to use those funds to trade stock options and for his personal use without their knowledge. Further, he continued to communicate with both investors on letterhead stationery labeled "Capital Group" even though he had left Capital Investment Group and had no authority to use its letterhead.

The evidence presented by the State falls well within the purview of sections 2 and 3 of N.C. Gen. Stat. § 78A-8. Section 2 prohibits an untrue statement of a material fact or the omission of a material fact necessary to make statements not misleading. "[T]o determine if an omitted fact is material, evidence must be presented that 'there is a substantial likelihood that a reasonable [purchaser] would consider it important in deciding [whether or not to purchase].' " *Williams*, 98 N.C. App. at 280, 390 S.E.2d at 749 (*quoting TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 48 L. Ed. 2d 757, 766 (1976)). Both Investigator Powell and Richard Bryant testified as to the excessive risk of stock options and the precautions required by the NASD. In the light most favorable to the State, defendant's failure to tell Plonk and Jackson that he would be using their funds to trade stock options after promising to invest their funds at a fixed interest rate constituted not only an untrue statement of material fact but also an omission of a material fact necessary so as not to mislead investors. The evidence was sufficient to defeat defendant's motion to dismiss the two counts charged under N.C. Gen. Stat. § 78A-8(2).

Section 3 prohibits "any act, practice, or course of business which operates . . . as a fraud or deceit upon any person." N.C. Gen. Stat. § 78A-8(3) (1997). The statute's broad definition encompasses

defendant's continuing misrepresentation of his employment with Capital Investment Group. Defendant used letterhead stationery labeled "Capital Group" in a manner calculated to deceive Jackson and Plonk with whom he had a prior relationship. In addition, he failed to deliver a prospectus regarding Jackson's investment and issued a "guaranteed interest rate certificate" on Capital Investment Group letterhead to Plonk. This provided additional evidence of defendant's fraudulent and deceptive acts. Thus, viewed in the light most favorable to the State, the evidence was sufficient to defeat defendant's motion to dismiss the charges under N.C. Gen. Stat. § 78A-8(3).

**[3]** Finally, defendant assigns as error the trial court's denial of his request to make further argument to the jury after the trial court gave additional instructions pursuant to N.C. Gen. Stat. § 15A-1234. The instructions at issue were a clarification of the original instructions dealing with securities fraud in the course of business pursuant to N.C. Gen. Stat. § 78A-8(3). The trial court originally instructed the jury:

> (T)hat the Defendant solicited and obtained investment funds . . . while through words and conduct, represented that he was acting as an employee of Capital Investment, Inc.

Later, the court corrected that instruction to read "words and/or conduct." Defendant argues that this correction changes the permissible verdicts of the jury and therefore he was entitled to make further argument to the jury.

> N.C. Gen. Stat. § 15A-1234(c) provides in part that:

> The parties upon request must be permitted additional argument to the jury if the additional instructions change, by restriction or enlargement, the permissible verdicts of the jury. Otherwise, the allowance of additional argument is within the discretion of the judge.

N.C. Gen. Stat. § 15A-1234(c) (1997). Where a trial judge clarifies or repeats instructions previously given, these are not "additional instructions" as contemplated in N.C. Gen. Stat. § 15A-1234(c). *State v. Farrington*, 40 N.C. App. 341, 253 S.E.2d 24 (1979). Here, the trial court merely clarified an earlier instruction and no "additional instructions" were given. Thus, whether to allow additional argument by defendant was within the discretion of the trial court. Absent any showing of an abuse of such discretion, the trial court's decision will

not be overturned. No abuse of discretion has been shown in this instance.

No error.

Judges LEWIS and MARTIN, John C., concur.