STATE OF NORTH CAROLINA v. ERIC JASON EARHART

No. COA98-1148

(Filed 6 July 1999)

## 1. Search and Seizure— automobile—cocaine—probable cause

The trial court did not err in a prosecution for trafficking in cocaine by denying defendant's motion to suppress evidence seized from his vehicle where the officers were able to use separate information obtained from the SBI and an independent investigation to corroborate information received from an informant and had reasonable grounds to believe that the tip was accurate and reliable and that drugs were in the vehicle.

## 2. Evidence— motion to suppress—denied without findings

There was no prejudicial error in a prosecution for trafficking in cocaine where the trial court denied defendant's motion to suppress without making findings. The only contradictory evidence presented by defendant was that he did not give consent to search his vehicle. Since probable cause existed for the search, evidence of defendant's consent is not relevant and the failure to make findings and conclusions is not prejudicial.

## 3. Evidence— hearsay—conversation between officers—explanation of subsequent conduct

The trial court did not err in a cocaine trafficking prosecution by allowing testimony of a conversation between two officers which led to one officer checking the license plate number of defendant's vehicle. The substance of the conversation was not inadmissible hearsay because it was admitted for the purpose of explaining subsequent conduct.

## 4. Drugs— constructive possession—automobile

There was sufficient evidence in a trafficking prosecution from which the jury could find that defendant knowingly pos-

sessed cocaine where the cocaine was found in the back seat of a vehicle owned and driven by defendant; there was a passenger in the vehicle but defendant had direct access to the cocaine, which was found behind his seat; and the cocaine was hidden in a similar manner to a handgun which defendant admitted was there.

Appeal by defendant from judgment entered 3 February 1998 by Judge William C. Griffin, Jr. in Currituck County Superior Court. Heard in the Court of Appeals 20 May 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Gayl M. Manthei, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

WALKER, Judge.

Defendant was convicted of trafficking by possession of more than 28 but less than 200 grams of cocaine, trafficking by transportation of more than 28 but less than 200 grams of cocaine, and carrying a concealed weapon. He was sentenced to an active term of 35 to 42 months for the trafficking convictions and was given a suspended sentence for the concealed weapon conviction.

The State's evidence at trial tended to show the following: On 27 April 1997, Deputy Joey Davidson received a telephone call at the Currituck County Sheriff's Department from an anonymous male. The caller informed Deputy Davidson that a white Trans Am would be traveling to a residence on North Spot Road in Powell's Point sometime between 27 April and 28 April and that it might be accompanied by a blue Subaru. The caller stated that the white Trans Am would be transporting approximately a pound of marijuana. The caller did not identify himself and Deputy Davidson did not recognize the voice. The caller hung up, but he called back a few minutes later and told Deputy Davidson that the suspects in the vehicles had scanners and that the information should not be broadcast over police radio.

Deputy Davidson then notified Detective Don Nichols and Deputy Richard Shaw of the anonymous tip. Detective Nichols informed Deputy Davidson that he had received information from the SBI about the owner of a white Trans Am who lived on North Spot Road and who was being investigated for suspicion of drug dealing. Detective Nichols also told Deputy Davidson that the suspect was reportedly armed with a Desert Eagle handgun.

STATE v. EARHART

[134 N.C. App. 130 (1999)]

Shortly after 6:00 p.m. on 27 April 1997, Deputy Shaw began a surveillance for the described vehicles along North Spot Road. Detective Nichols contacted him there and informed him that a license check he had performed revealed that the white Trans Am would have license number KPA-1083 and would be driven by a person named Earhart who was known to carry weapons. Soon after that conversation, Deputy Shaw observed a blue Subaru, matching the description given by the informant, pull into the driveway of a residence along North Spot Road. Deputy Shaw pulled in behind the vehicle and asked the driver whose residence this was. The driver stated that it was her friend Tammy Taylor's house and that she was visiting Tammy while Tammy's boyfriend was out of town. Deputy Shaw told the driver he had information that a blue Subaru had been involved in a crime and asked permission to search the vehicle. The driver agreed to the search. No contraband was found in the blue Subaru. Deputy Shaw then asked the name of Tammy Taylor's boyfriend and what type of car he drove. The driver stated that his name was Earhart and that he drove a white Trans Am. Deputy Shaw then returned to his surveillance.

Detective Nichols testified that on 10 April 1997, he had received a telephone call from Donnie Varnell, an agent with the SBI, who informed him that a person whose name sounded like "Airhart" was selling cocaine and marijuana from his home on North Spot Road and that he drove a white Trans Am, a blue Chevrolet Cavalier, and a rust Jeep. Varnell also told him that the SBI had received this information from an individual who had been inside Earhart's residence. Detective Nichols used this information to run the license check which revealed the information he later gave to Deputy Shaw on North Spot Road. After he called Deputy Shaw, Detective Nichols joined him on North Spot Road and suggested that they move farther north to watch for the white Trans Am. As they drove north, Detective Nichols radioed Deputy Shaw that the white Trans Am had passed him. Deputy Shaw then pulled over the Trans Am.

The white Trans Am was occupied by two individuals. The driver was identified as the defendant and the passenger was identified as Ellsworth Burrus Midgett. Detective Nichols informed defendant of the information they had received regarding his vehicle and asked him if there were any drugs or weapons in the car. Defendant denied possessing any drugs in the car, but admitted that he had a pistol in the Trans Am. Detective Nichols then testified that he asked for defendant's consent to search the vehicle and that defendant con-

sented. Detective Nichols then used his canine partner, Aris, to search the vehicle for drugs. Aris alerted to the back seat area of the vehicle and Detective Nichols recovered a plastic bag containing approximately 50 grams of a white powder substance, later determined to be cocaine, which was located under the upper portion of the back seat which had been folded down onto the seat. Aris then recovered a cigarette box containing several "joints" of marijuana. Detective Nichols also found a Desert Eagle handgun containing six rounds of ammunition in the back seat hidden in a similar manner to the cocaine.

Prior to trial, defendant filed a motion to suppress the evidence recovered from his vehicle. At a *voir dire* hearing on the motion, defendant testified that he did not give consent to search his vehicle. The State presented substantially the same evidence later presented at trial. The trial court denied the defendant's motion to suppress and indicated its intent to make appropriate findings of fact, but the record contains no order.

**[1]** Defendant first contends that the trial court erred in denying his motion to suppress the evidence seized from his vehicle and erred in failing to make appropriate findings regarding the evidence presented at the *voir dire* hearing. Defendant argues that the search of his vehicle and his ensuing arrest violated his Fourth Amendment rights because the officers did not have probable cause to conduct the search.

A search of a vehicle on a public roadway or public vehicular area is properly conducted without a warrant as long as probable cause exists for the search. *State v. Isleib*, 319 N.C. 634, 356 S.E.2d 573 (1987). "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *State v. Zuniga*, 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984) (*quoting Brinegar v. United States*, 338 U.S. 160, 175, 93 L. Ed. 1879, 1890, *rehearing denied*, 338 U.S. 839, 94 L. Ed. 513 (1949)). In utilizing an informant's tip, probable cause is determined using a "totality-of-the-circumstances" analysis which "permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." *Illinois v. Gates*, 462 U.S. 213, 234, 76 L. Ed. 2d 527, 545, *rehearing denied*, 463 U.S. 1237, 77 L. Ed. 2d 1453 (1983). In *Gates*, the United States Supreme Court abandoned the "two-prong test" elaborated in *Aguilar*

*v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637 (1969). The "two-prong test" emphasized the need for independent indices or facts supporting the informant's "basis of knowledge" for his tip and the "veracity" or "reliability" of the tip. *Gates*, 462 U.S. at 228-29, 76 L. Ed. 2d at 542. These factors remain relevant to the determination of the value of the informant's report; however, the totality-of-the-circumstances test allows a less rigid evaluation. *Id.* Further, in making the probable cause determination, independent police corroboration of the facts given by the informant are important in evaluating the reliability of the informant's tip. *See Draper v. United States*, 358 U.S. 307, 3 L. Ed. 2d 327 (1959). Thus, all of these factors must be considered in evaluating whether probable cause exists to conduct a search based in part on an informant's tip.

In this case, in addition to the informant's tip which provided the description of the two vehicles and the time they would be driving along North Spot Road, the officers involved were able to use separate information obtained from the SBI and from an independent investigation to corroborate the information received. This included the type of vehicle driven by the defendant, the name of the defendant, and information that the defendant was known to sell drugs including marijuana and cocaine. Detective Nichols had received information about defendant from the SBI and Deputy Shaw learned from the driver of the blue Subaru that defendant was away for the weekend. The officers were able to independently verify all of the anonymous informant's tip except for the presence of drugs in the vehicle prior to the vehicle stop. Based on all this information, the officers had reasonable grounds to believe the tip was accurate and reliable and that drugs were in the vehicle. *See State v. Smith*, 118 N.C. App. 106, 454 S.E.2d 680, *reversed on other grounds*, 342 N.C. 407, 464 S.E.2d 45 (1995), *cert. denied*, 517 U.S. 1189, 134 L. Ed. 2d 779 (1996). Considering the totality-of-the-circumstances and the factors listed above, we conclude that probable cause existed to search defendant's vehicle and this assignment of error is overruled.

[2] Next, we address the trial court's failure to make findings in support of its order denying defendant's motion to suppress. N.C. Gen. Stat. § 15A-977(d) requires that if a motion to suppress is not summarily denied the trial court "must make the determination after a hearing and finding of facts." N.C. Gen. Stat. § 15A-977(d) (1997). Further, subparagraph (f) requires that the trial court place its findings and conclusions in the record. N.C. Gen. Stat. § 15A-977(f)

(1997). However, this Court and our Supreme Court have held that when there is no material conflict in the evidence presented at *voir dire*, the omission of findings is not error. *State v. Phillips*, 300 N.C. 678, 268 S.E.2d 452 (1980); *State v. Futrell*, 112 N.C. App. 651, 436 S.E.2d 884 (1993). In this case, the only contradictory evidence presented by defendant was that he did not give consent to search his vehicle. As we have concluded that probable cause existed to search defendant's vehicle, evidence as to whether defendant gave consent to search his vehicle is not relevant and the trial court's failure to make findings and conclusions is not prejudicial error.

[3] Defendant next contends that the trial court erred in allowing the testimony contained in the following exchange between Detective Nichols and the prosecution during direct examination:

Mr. Trivette (prosecutor): All right. Based upon the information you got from Deputy Shaw and Deputy Davidson, the information you had already gotten from Special Agent Donnie Varnell, what did you do? Did you make a call?

A: Yes, sir. I contacted Donnie Varnell back at that time and tried to gain information again if this was the subject.—

Mr. Lamb (defense counsel): Objection.

Mr. Trivette: Telling what he did.

The Court: Tell us what you did.

A: I contacted Special Agent Varnell and asked him was this the subject we had talked about in the past.

Mr. Lamb: Objection, motion to strike.

The Court: Overruled. Motion denied.

Mr. Trivette: After you had that conversation with Agent Varnell, what did you do?

A: I contacted—I attempted to locate the license plate number of the vehicle.

Defendant argues that, as a result of the conversation with Agent Varnell, Detective Nichols checked the license plate number of defendant's vehicle. Defendant contends that this testimony constitutes hearsay and was inadmissible.

Hearsay is inadmissible unless allowed by an exception. N.C. Gen. Stat. § 8C-1, Rule 802 (1992). Hearsay is a statement made by one not testifying at trial which is offered in evidence to prove the truth of the matter asserted. N.C. Gen. Stat. § 8C-1, Rule 801(c) (1992). A statement is an "oral or written assertion" or "nonverbal conduct of a person, if it is intended by him as an assertion." N.C. Gen. Stat. § 8C-1, Rule 801(a) (1992).

The substance of the conversation with Agent Varnell was not inadmissible hearsay because it was admitted for the purpose of explaining Detective Nichols' subsequent conduct of checking the license plate number and thus not for the truth of the matter asserted. *See, e.g., State v. Reid*, 335 N.C. 647, 440 S.E.2d 776 (1994); *State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48 (1990). This assignment of error is overruled.

[4] Finally, defendant contends that the trial court erred in denying his motion to dismiss the charges against him. Defendant argues that there was insufficient evidence that he knowingly possessed the cocaine. In ruling on a motion to dismiss for insufficient evidence, "the trial court must consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom." *State v. Davidson*, 131 N.C. App. 276, 282, 506 S.E.2d 743, 747 (1998) (*quoting State v. Elliot*, 344 N.C. 242, 266, 475 S.E.2d 202, 212 (1996), *cert. denied*, 520 U.S. 1106, 137 L. Ed. 2d 312 (1997)), *disc. review denied*, 350 N.C. 312, —— S.E.2d —— (1999). There must be substantial evidence of each element of the offense charged and evidence that the defendant was the perpetrator of the offense. *State v. Mlo*, 335 N.C. 353, 440 S.E.2d 98, *cert. denied*, 512 U.S. 1224, 129 L. Ed. 2d 841 (1994).

Possession may consist of either physical or constructive possession. *State v. Morris*, 102 N.C. App. 541, 402 S.E.2d 845 (1991). Evidence of constructive possession is sufficient if it would allow a reasonable mind to conclude that the defendant had the intent and capability to maintain control and dominion over the contraband. *State v. Beaver*, 317 N.C. 643, 346 S.E.2d 476 (1986). "Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972). Unless the person has exclusive possession of the place where the narcotics are found, the State must show

**IN RE CRAWFORD**

[134 N.C. App. 137 (1999)]

other incriminating circumstances before constructive possession may be inferred. *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989).

In this case, the evidence showed that the cocaine was found in the back seat of a vehicle owned by the defendant who was operating it at the time he was stopped. Although there was a passenger in the vehicle, the cocaine was found behind defendant's seat to which he had direct access. Further, the cocaine was hidden in a similar manner to the handgun—under the folded back seat—which defendant admitted was there. Therefore, we conclude there was sufficient evidence from which the jury could find that defendant knowingly possessed the cocaine. This assignment of error is overruled.

Defendant received a fair trial, free of prejudicial error.

No error.

Judges McGEE and EDMUNDS concur.