An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e     P r o c e d u r e .

NO. COA 13-934
NORTH CAROLINA COURT OF APPEALS

Filed:  18 February 2014


STATE OF NORTH CAROLINA,

     v.                              Guilford County
                                     Nos. 11 CRS 073416, 073417
DONALD SCOTT HENDERSON,
     Defendant.


On writ of certiorari to review judgment entered 23 May 2012 by Judge Lindsay R. Davis, Jr. in Guilford County Superior Court.  Heard in the Court of Appeals 3 February 2014.


*Roy Cooper, Attorney General, by Benjamin J. Kull, Assistant Attorney General, for the State.*

*Gerding Blass, PLLC, by Danielle Blass, for defendant-appellant.*


MARTIN, Chief Judge.


Defendant Donald Scott Henderson was indicted for conspiracy to deliver cocaine, trafficking by possession of cocaine, trafficking by transporting cocaine, and maintaining a vehicle for selling controlled substances.  Prior to his trial, defendant moved to suppress evidence seized by police after stopping and searching his vehicle on 12 April 2011.  After a

hearing, the trial court denied the motion to suppress. Defendant then pleaded guilty to all charges, reserving his right to appeal the denial of his motion to suppress. Although defendant expressly reserved the right to appeal, defendant failed to give timely notice of appeal. This Court granted his subsequent petition for writ of certiorari.

The evidence presented at the suppression hearing tended to show that on 12 April 2011 Greensboro Police Department Detective J.B. Blanks and Corporal J.H. Marsh arrested a suspect on cocaine-trafficking charges. After the arrest, the suspect agreed to become a confidential informant. He informed the officers that, on the same day, he had plans to buy one-eighth of a kilogram of cocaine from a black male named Donnie who had green eyes and was approximately 40 years old. He also told the officers that Donnie drove a silver or gray Dodge Magnum. This transaction was arranged by a black female named Alikii Allen who was known to the confidential informant. The officers listened in on several telephone conversations between the confidential informant and Ms. Allen as they confirmed and arranged their meeting.

The officers knew that defendant and Ms. Allen would take I-40 to the Guilford College Road exit to get to the confidential informant's residence. As a result, officers were

stationed in the area around the exit to await the arrival of the silver or gray Dodge Magnum. Detective Blanks and Detective Goodykoontz saw the Dodge Magnum take the exit ramp off the interstate, and Corporal Flynt and his partner Officer C.H. Peeden followed the car while driving an unmarked police truck. During this time, Ms. Allen or defendant apparently became aware that they were being followed by the police because Ms. Allen called the confidential informant and told him that the police were following them. Defendant drove past the planned meeting location and turned left onto Sapp Road. Corporal Flynt then made the decision to stop the defendant's car. Detectives Blanks and Goodykoontz searched the car and found, in the center console, a Crown Royal bag containing one-eighth of a kilogram of cocaine.

_____

Defendant argues that the trial court should have granted his motion to suppress evidence obtained during the warrantless search of his vehicle because neither the stop nor the search were supported by probable cause. We disagree.

When we review a trial court's ruling on a motion to suppress we consider "whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Haislip*, 362 N.C.

499, 499, 666 S.E.2d 757, 758 (2008). "[T]he trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (internal quotation marks omitted), *appeal after remand*, 355 N.C. 264, 559 S.E.2d 785 (2003). "The trial court's conclusions of law, however, are reviewable *de novo*." *State v. Hyatt*, 355 N.C. 642, 653, 566 S.E.2d 61, 69 (2002), *cert. denied*, 537 U.S. 1133, 154 L. Ed. 2d 823 (2003).

Defendant argues that findings of fact five and eight are not supported by the evidence from the suppression hearing. Finding of fact five states:

> The "confidential source" provided identifying information including the defendant's first name, a physical description, his employment, a description of the vehicle he would deliver the cocaine in, a description of a second accomplice, and an account of the informant's prior drug dealing relationship with the defendant.

Defendant asserts that the evidence does not support the findings that the confidential informant provided defendant's name, a physical description of defendant, or defendant's employment.

Testimony at the hearing disclosed that the confidential informant told officers that he was going to buy drugs from a man named Donnie. Defendant contends that this evidence does

not support the trial court's finding that the confidential informant provided defendant's name because Donnie is not his "actual name." While defendant's legal name is Donald, it appears that he is also known as Donnie based on the testimony at the suppression hearing. Therefore, the evidence that the confidential informant told officers that defendant's name was Donnie supports the trial court's finding that the confidential informant provided defendant's first name.

Next, the evidence supports the finding that the confidential informant provided a physical description of defendant. Detective Blanks testified that the confidential informant said he planned to buy drugs from "a black male named Donnie, with green eyes." Corporal Marsh also testified that the confidential informant "described Donnie as a black male, almost, approximately, 40 years of age." Detective Blanks's and Corporal Marsh's testimony supports the trial court's finding that the confidential informant provided a physical description of defendant.

Lastly, defendant correctly states that the evidence does not support the trial court's finding that the confidential informant provided information regarding defendant's employment. A review of the transcript from the suppression hearing reveals no mention of defendant's employment. Thus, there is no

evidence to support the trial court's finding that the confidential informant provided information regarding defendant's employment. This error, however, affords defendant no relief.

"The test for prejudicial error is whether there is a reasonable possibility that, had the error not been committed, a different result would have been reached." *State v. Scott*, 331 N.C. 39, 46, 413 S.E.2d 787, 791 (1992). In this case, due to the accuracy of the other information provided, defendant's employment is simply irrelevant to the stop or search. Therefore, a different result would not have been reached at the suppression hearing if the trial court had not found that the confidential informant provided information about defendant's employment.

Defendant also argues that finding of fact eight is not supported by the evidence. Finding of fact eight states:

> Assisting police officers responded to a specific highway exit and were able to identify the described vehicle approach the meet [sic] location at the agreed time. The vehicle was occupied by two individuals matching descriptions already provided by the "source[."]

Defendant contends that the evidence does not support this finding because the vehicle was stopped before it approached the meeting location, there was no child in the car as had been

reported by the confidential informant, and the female in the car did not match the description given by the confidential informant.

Corporal Flynt testified that he and his partner followed the Dodge Magnum through the intersection of Guilford College and Hornaday. They were expecting the car to pull into one of the parking lots after the intersection but it never did. Instead, defendant turned down Sapp Road and Ms. Allen called and told the confidential informant that the police were following them. Then defendant turned on McClellan Road, and Corporal Flynt knew that this road was a dead end. At that point, Corporal Flynt and his partner decided to stop the vehicle. This testimony supports the trial court's finding that police officers identified the described vehicle as it approached the meeting place. Corporal Flynt testified that he watched the vehicle as it approached and drove past the meeting location, after Ms. Allen had telephoned the confidential informant to tell him that the police were following them.

Next, there is conflicting evidence about whether the information given to the police included that a child was in the car. At one point, Corporal Marsh testified that Ms. Allen had told the confidential informant that defendant had to drop his son off before meeting the confidential informant. Corporal

Marsh, however, later testified that there was information that a child was in the car.

As stated earlier, a trial court's finding may be supported by competent evidence even if there is conflicting evidence. *See Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826. There was competent evidence to support the trial court's finding that there were two people in the vehicle, despite Corporal Marsh's conflicting testimony, because Corporal Flynt's and Detective Blanks's testimony suggested that there should have been only two people in the car.

Finally, defendant argues that Ms. Allen's race did not match the description given by the confidential informant. Defendant contends that because Corporal Marsh testified that Ms. Allen was described as a "Dominican girl," the officers should have been looking for an Hispanic female. Defendant's argument, however, confuses race and nationality.[1] While there is no evidence in the suppression hearing transcript of Ms. Allen's nationality, there is competent evidence, based on Corporal Flynt's and Detective Blanks's testimony, to support the trial court's finding that Ms. Allen matched the description

---

[1] We note that Hispanic is not considered a race in the United States, but defendant argues that it is a race so we treat it as a race. *Race*, U.S. Census Bureau http://www.census.gov/population/race/ (last updated Nov. 28, 2012).

because she was black and the confidential informant described her as black.

Having determined that the trial court's findings of fact are supported by competent evidence, we review de novo the trial court's conclusion of law that the warrantless search of defendant's car was supported by probable cause.

The United States Constitution and the North Carolina Constitution protect citizens from unreasonable searches and seizures. *State v. Garner*, 331 N.C. 491, 506, 417 S.E.2d 502, 510 (1992). As a general rule, a warrant is required for every search and seizure; however, there are exceptions. *State v. Trull*, 153 N.C. App. 630, 638-39, 571 S.E.2d 592, 598 (2002), *appeal dismissed* and *disc. review denied*, 356 N.C. 691, 578 S.E.2d 596-97 (2003). For example, a motor vehicle that is on a public road may be searched without a warrant if the search is based on probable cause. *State v. Isleib*, 319 N.C. 634, 638, 356 S.E.2d 573, 576 (1987). Probable cause exists when an officer has knowledge based on reasonably trustworthy information about facts or circumstances that are sufficient "to warrant a man of reasonable caution to belie[ve] that an offense has or is being committed." *State v. Zuniga*, 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984) (internal quotation marks omitted). When a confidential informant's tip is the basis for a

warrantless search, a court must consider the totality of the circumstances to determine if probable cause exists. *State v. Earhart*, 134 N.C. App. 130, 133, 516 S.E.2d 883, 886, *appeal dismissed*, 351 N.C. 112, 540 S.E.2d 372 (1999). Under the totality-of-the-circumstances test a court weighs all of the indications of reliability and unreliability surrounding an informant's tip. *Id.* at 133-34, 516 S.E.2d at 886. Some of the factors a court considers when conducting the totality-of-the-circumstances test are the informant's basis of knowledge for the tip, the reliability of the informant's tip, and whether there is independent police corroboration of the facts relevant to the informant's tip. *Id.* at 134, 516 S.E.2d at 886.

In this case, the confidential informant had previously bought drugs from defendant and had arranged to buy more drugs from defendant before agreeing to become a confidential informant. Thus, he had personal knowledge of the information he shared with the police. In addition, officers were able to listen to the confidential informant's telephone conversations with Ms. Allen as they confirmed and coordinated their meeting. From these conversations, officers knew the route that defendant and Ms. Allen would take to reach the confidential informant's residence and were able to place a surveillance team in the area. As a result, officers observed a car with occupants

matching the descriptions provided approach the meeting location. Officers also knew, from monitoring the confidential informant's telephone calls, that Ms. Allen and defendant drove past the meeting location out of concern that the police were following them. Therefore, based on the confidential informant's knowledge and the officers' ability to confirm the details of the tip, a man of reasonable caution, having such information, would have reason to believe that an offense was being committed.

Affirmed.

Judges ELMORE and HUNTER, JR. concur.

Report per Rule 30(e).