Skoog v. Harbert Private Equity Fund, II, LLC, 2013 NCBC 17.

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF CATAWBA | 12 CVS 406 |

| | |
|---|---|
| GREG SKOOG, ROSEMARY SKOOG and ALAN DIETZ, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| | ) **ORDER AND OPINION** |
| HARBERT PRIVATE EQUITY FUND, II, LLC, and HARBERT PRIVATE EQUITY FUND II MM, LLC, | ) ) ) ) |
| Defendants. | ) ) |

{1}     THIS MATTER is before the court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint ("Motion") pursuant to Rules 9(b) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

*Sigmon, Clark, Mackie, Hanvey & Ferrell, P.A. by Forrest A Ferrell and Stephen L. Palmer for Plaintiffs.*

*McGuire Woods LLP by Douglas W. Ey, Jr., R. Matthew Pearson, and T. Richmond McPherson, III for Defendants.*

Gale, Judge.

## I.     PARTIES

{2}     Plaintiffs Greg Skoog, Rosemary Skoog, and Alan Dietz are citizens and residents of Catawba County, North Carolina and were shareholders of Lance Transport, Inc. ("Lance Transport").  (Am. Compl. ¶¶ 1–3, 6.)  Lance Transport was a freight transportation business in Hildebran, North Carolina.  (Am. Compl. ¶ 7.)

{3}     Defendant Harbert Private Equity Fund II MM, LLC ("Harbert MM") is an Alabama limited liability company doing business in Catawba County, North

Carolina, and is the Managing Member of Defendant Harbert Private Equity Fund II, LLC ("Harbert").[1]  (Am. Compl. ¶ 5.)  Harbert MM and Harbert will collectively be referred to as "Defendants."

## II.    PROCEDURAL BACKGROUND

{4}    Plaintiffs initiated this lawsuit in Catawba County on March 5, 2012. The case was designated a Business Court case by Chief Justice Sarah Parker by Order dated April 9, 2012 and assigned to the undersigned on April 11, 2012. Defendants filed a Motion to Dismiss the original Complaint on May 7, 2012 and a hearing was held on July 12, 2012.

{5}    Plaintiffs filed an Amended Complaint on August 15, 2012, mooting the original Motion to Dismiss.  The Amended Complaint brings a claim alleging violations of the North Carolina Securities Act ("NCSA"), N.C. GEN. STAT. §§ 78A-1–66 (2013), specifically § 78A-56(a) ("Section 56(a)" or "§ 56(a)") and § 78A-56(c) ("Section 56(c)" or "§ 56(c)").

{6}    Defendants filed the present Motion on September 14, 2012.  The Motion has been fully briefed, a hearing was held on December 4, 2012, and the matter is ripe for disposition.

## III.    FACTUAL BACKGROUND

{7}    The court does not make findings of fact in connection with a motion to dismiss, as a motion to dismiss "does not present the merits, but only [determines]

---

[1] Harbert Management Corporation was an additional named defendant when Plaintiffs initiated this lawsuit.  In their response to Defendant's initial Motion to Dismiss and at the hearing on the initial Motion to Dismiss, Plaintiffs noted that they do not have evidence sufficient to establish personal jurisdiction over Harbert Management Corporation, and would file a voluntary dismissal without prejudice as to its claims against Harbert Management Corporation.  (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 13; Hearing Tr. 3:21–4:3, July 12, 2012.)  It appears to the court that no such dismissal was ever filed, however, both parties reflect in the captions to their respective filings that Harbert Management Corporation is no longer a party to this action.  Consequently, the court does not include Harbert Management Corporation in its consideration of the present Motion.

whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). The following facts are stated to provide context for the court's opinion and are construed in favor of the Plaintiffs, with the court drawing permissible inferences not inconsistent with the facts alleged. The court is not required to accept Plaintiffs' legal conclusions. The court may consider documents which are the subject matter of the action or which are specifically referred to in the complaint without converting a 12(b)(6) motion into a motion for summary judgment. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60–61, 554 S.E.2d 840, 847 (2001); *Coley v. N.C. Nat'l Bank*, 41 N.C. App. 121, 126, 254 S.E.2d 217, 220 (1979).

A.  Negotiations

{8}    In 2008, Harbert, as the majority shareholder of CF Holding Company, Inc. ("CF Holding")[2], approached Plaintiffs to negotiate a potential acquisition of Lance Transport by CF Holding. (Am. Compl. ¶ 8.) Winston Gillum was the primary negotiator on behalf of Harbert and CF Holding, and Greg Skoog primarily negotiated on behalf of Lance Transport. (Am. Compl. ¶ 9.)

{9}    On October 9, 2008, Harbert and CF Holding issued a Letter of Intent offering to purchase Lance Transport's business for 11,300 shares of common stock of CF Holding (valued at $154.87 per share), cash, and a payoff of Lance Transport's debt obligations, which were guaranteed by Plaintiffs. (Am. Compl. ¶ 15.) At the time of the negotiations for the sale of Lance Transport, CF Holding was experiencing financial difficulties and was in default on a loan with Bank of America. (Am. Compl. ¶¶ 12, 27.) To allow CF Holding to meet its operating expenses, Harbert loaned CF Holding a total of $1.5 million in "working capital" during this time period; $500,000.00 each on September 30, 2008, December 26, 2008, and February 2, 2009. (Am. Compl. ¶¶ 13, 17, 41, 64.)

{10}   During Plaintiffs' due diligence period, Harbert provided financial information for CF Holding which covered the period ending in November 2008

---

[2] CF Holding is in bankruptcy and is not a party to this action.

("November financial documents"). (Am. Compl. ¶ 17.) Plaintiffs allege that the November financial documents did not disclose Harbert's September, 2008 loan to CF Holding. (Am. Compl. ¶ 17.) Plaintiffs were not provided any financial information for CF Holding covering periods of time after November 2008, and there is no allegation that Plaintiffs asked for and were denied any additional financial information. (Am. Compl. ¶ 18.)

{11} As a result of their due diligence review Plaintiffs "became aware that CF Holding would require substantial infusions of working capital for it to remain a viable operating entity." (Am. Compl. ¶ 19.) When Greg Skoog expressed this concern to Winston Gillum, Gillum responded that Harbert would provide CF Holding with approximately $3 million in cash when the acquisition occurred, and that Harbert "had $35 million in committed but uncalled capital to provide additional equity investments into CF Holding if needed." (Am. Compl. ¶¶ 20–21.) Don Beard of Harbert also expressed Harbert's intention to "support CF Holding over the long haul" at a dinner Plaintiffs attended before the closing of the sale of Lance Transport to CF Holding. (Am. Compl. ¶ 36.)

B. Closing

{12} On February 12, 2009 the acquisition of Lance Transport closed and CF Holding and Lance Transport signed a Stock Purchase Agreement setting forth the final terms of the deal. (Am. Compl. ¶ 38; Mot. to Dismiss Ex. A.) The final terms included that Plaintiffs would receive $797,838.00 cash, 16,000 shares of stock in CF Holding (valued at $2 million, or $125 per share), promissory notes in the amount of $2.1 million, and the assumption by CF Holding of approximately $3,445,186.00 in Lance Transport debt, for a total compensation of over $8 million. (Am. Compl. ¶ 39.) Alan Dietz and Greg Skoog were also offered post-closing employment with CF Holding. (Am. Compl. ¶ 39.)

{13} Documents referenced in the Amended Complaint demonstrate other parts of the transaction that are not stated in the specific allegations of the Amended Complaint itself. These include that as part of the closing, Harbert

contributed more than $2.5 million to CF Holding in the form of $1,518,884.72 as cancellation of Harbert's earlier loans and $997,365.28 in cash. (Mot. to Dismiss Ex. A, Ex. O, Ex. C, at 2), and that on the same day the parties entered into the Stock Purchase Agreement, Lance Transport, CF Holding, and Bank of America also entered into a "Third Amendment to Loan and Security Agreement and Waiver with Bank of America" ("Third Amendment"). (Br. in Supp. of Defs.' Mot. to Dismiss Pls.' Am. Compl. [hereinafter "Brief in Supp."] 9; Br. in Supp. Ex. I.) The Third Amendment added Lance Transport as a party to the loan between CF Holding and Bank of America, and stated that Bank of America was willing to waive the defaults that had occurred under its loan with CF Holding. (Brief in Supp. 9–10; Brief in Supp. Ex. I, at 1, 3.)

C. Post Closing

{14} Soon after the closing in February, 2009, CF Holding was required to make vehicle tag payments totaling approximately $500,000.00, of which Plaintiffs allege they were unaware at closing and which significantly reduced CF Holding's operating capital. (Am. Compl. ¶¶ 34, 42.) Harbert made a fourth $500,000.00 infusion of working capital into CF Holding sometime after the closing. (Am. Compl. ¶ 52.) CF Holding made only three interest payments on the $2.1 million of notes issued to Plaintiffs pursuant to the terms of the Stock Purchase Agreement before filing for bankruptcy protection in 2011. (Am. Compl. ¶¶ 51, 53.)

## IV.    STANDARD OF REVIEW

{15} The appropriate inquiry on a motion to dismiss pursuant to Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). A motion to dismiss may be granted if

the complaint reveals the absence of facts required to make out a claim for relief or if the complaint reveals some fact that necessarily defeats the claim. *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002).

## V. ANALYSIS

{16} Plaintiffs claim that they would not have entered into the transaction with CF Holding had they known its true financial condition. (Am. Compl. ¶ 40.) They allege that Harbert "intended to provide selective information to the Plaintiffs in an effort to mislead them into a false belief as to the value of the consideration they would receive in exchange for selling the business of Lance Transport to CF Holding[ ]," knowing that the consideration Plaintiffs were to receive pursuant to the Stock Purchase Agreement was overvalued. (Am. Compl. ¶¶ 29, 45.)

{17} Plaintiffs complain these alleged actions by Defendants were in violation of the NCSA, making them either primarily liable under § 56(a) as a seller or offeror of the CF Holding stock, or secondarily liable under § 56(c) as a "controlling person" of CF Holding. (Am. Compl. ¶¶ 60–65.)

### A. Allegations Against Defendant Harbert MM

{18} In their original Complaint, Plaintiffs stated without further specificity that Defendant Harbert MM was "acting in concert with Harbert," and so is jointly and severally liable with Harbert. (Compl. ¶ 72.) At the hearing on Defendants' Motion to Dismiss the original Complaint, Plaintiffs' counsel indicated that they were not attempting to allege a claim in the nature of a conspiracy against Harbert MM, but instead that Harbert MM was liable under the terms of the NCSA, and asked to be able to amend their Complaint to reflect the discussion that occurred at the hearing. (Hearing Tr. 86:4–87:21, July 12, 2012.) In their Amended Complaint, Plaintiffs again state only the conclusion that Harbert MM "was acting in concert with" Harbert, and as such is jointly and severally liable; Plaintiffs do not allege that Harbert MM is a "controlling person" of Harbert or of CF Holding so as to state

a claim against Harbert MM under § 56(c). (Am. Compl. ¶ 5.) The Amended Complaint contains no further factual support for this conclusion, and no other allegations against Harbert MM are made. The court concludes that Plaintiffs have failed to state any claim against Harbert MM, and as such Harbert MM's Motion is GRANTED so far as it seeks to dismiss any claims against it.

## B. Harbert's Primary Liability Under Section 56(a)

{19}   So far is as relevant here, subsection (a) of § 56 of the NCSA creates primary civil liability for:

(a) Any person who:

> (1) Offers or sells a security in violation of G.S. 78A-8(1) [or] 78A-8(3) . . . , or
>
> (2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission . . . .

N.C. GEN. STAT. § 78A-56(a) (2013).

{20}   Section 56(a) provides liability only against one who offers or sells a security. The NCSA defines a "security" as:

> any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; . . . investment contract . . .; or, in general, any interest or instrument commonly known as a "security[.]

N.C. GEN. STAT. § 78A-2(11) (2013). The shares of CF Holding stock transferred to Plaintiffs are securities governed by the NCSA.

### i. Harbert as a Seller or Offeror of a Security

{21}   The question then arises whether Plaintiffs have sufficiently alleged that Harbert offered or sold the shares of CF Holding to Plaintiffs such that their

claims of primary liability against Harbert may move forward on this basis. The court concludes that they have.

{22} The NCSA defines "sell" as including "every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value," and defines "offer" or "offer to sell" as including "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value. N.C. GEN. STAT. § 78A-2(8)(a)–(b) (2013). This definition extends primary liability beyond the owner of the security who transferred title to the purchaser. *See State v. Williams*, 98 N.C. App. 274, 279, 390 S.E.2d 746, 749 (1990); *Pinter v. Dahl*, 486 U.S. 622, 642–43 (1988). Thus, even though Plaintiffs received shares of stock in CF Holding, not Harbert, and therefore CF Holding, not Harbert, was the owner who transferred title in the stock to Plaintiffs, Harbert may nonetheless be an offeror or seller of the stock.

{23} In *Williams* the North Carolina Court of Appeals considered who may be deemed a seller or offeror under the NCSA. 98 N.C. App. 274, 390 S.E.2d 746. The Court of Appeals cited to the U.S. Supreme Court's analysis in *Pinter v. Dahl*, which "placed great emphasis on the *solicitation* of the buyer as the 'most critical stage of the selling transaction'" when determining that the defendant attorney was not an offeror or seller because he did not solicit the investment at issue in any way. *Id.* at 279, 390 S.E.2d at 749. This is consistent with the NCSA's definition of "offer," which includes "solicitation of an offer to buy" a security. N.C. GEN. STAT. § 78A-2(8)(b) (2013).

{24} Plaintiffs have alleged that it was Harbert that approached the Plaintiffs offering to negotiate CF Holding's acquisition of Lance Transport, and that "Harbert was the majority and controlling shareholder of CF Holding and conducted all material negotiations concerning CF Holding's acquisition of Lance Transport's business operations." (Am. Compl. ¶¶ 8, 11.) Plaintiffs have also alleged that Harbert made promises of continued support for CF Holding to induce Plaintiffs to sell Lance Transport to CF Holding. (Am. Compl. ¶¶ 21–22, 37.)

{25}    Having concluded that Plaintiffs have adequately alleged that Harbert sold or offered a security, the court turns to whether Plaintiffs have pled a claim under § 56(a)(1) or (2) sufficient to withstand a motion to dismiss.  It will separately consider the claim premised on a false or misleading statement under § 56(a)(2) from the claim for an overall scheme to defraud Plaintiffs premised on § 56(a)(1).  The court first examines the claim under § 56(a)(2) because it arguably has a more lenient pleading standard.

ii. Harbert's Liability Under Section 56(a)(2)

{26}    Section 56(a)(2) provides a cause of action against a person who:

offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of the untruth or omission) . . . .

N.C. GEN. STAT. § 78A-56(a)(2) (2013).  The statute then provides a defendant with an affirmative defense that it "did not know, and in the exercise of reasonable care could not have known, of the untruth or omission."  N.C. GEN. STAT. § 78A-56(a)(2) (2013).  Section 56(a)(2) parallels § 12(a)(2) of the federal Securities Act of 1933, and "cases construing § 12[a](2) should be considered when interpreting § 78A-56[(a)(2)]."  *Venturtech II, L.P. v. Deloitte Haskins & Sells*, 790 F. Supp. 576, 588 (E.D.N.C. 1992).

{27}    To state a claim pursuant to § 56(a)(2) then, a plaintiff must at a minimum allege (1) a false or misleading statement, or a statement which, because of the circumstances under which it was made, was made false or misleading because of the omission of other facts; (2) that the statement was material; and (3) that the statement was made by one who offered or sold a security.  *NNN Durham Office Portfolio 1, LLC v. Highwoods Realty Ltd. P'ship*, 2013 NCBC LEXIS 11, at *68 (N.C. Super. Ct. Feb. 19, 2013).

{28}    An omission must be tied to an affirmative statement, because there is no general duty of disclosure imposed by either federal or North Carolina securities

laws. *See Chiarella v. United States*, 445 U.S. 222, 230 (1980) ("silence in connection with the purchase or sale of securities may operate as a fraud actionable under § 10 (b) despite the absence of statutory language or legislative history specifically addressing the legality of nondisclosure. But such liability is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction."); *NNN Durham Office Portfolio 1, LLC*, 2013 NCBC LEXIS 11, at *51; *see also Krim v. Coastal Physician Grp., Inc.*, 81 F Supp. 2d 621, 630 (M.D.N.C. 1998) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5") (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)). For § 56(a)(2) liability to rest on one or more omissions where there is no duty to disclose otherwise imposed, the omission(s) must be tied to an affirmative statement which was made misleading by the omission. *NNN Durham Office Portfolio 1, LLC*, 2013 NCBC LEXIS 11, at *65.

{29}    A statement is material if "there is a substantial likelihood that a reasonable purchaser would consider it important in deciding whether or not to purchase," *Williams*, 98 N.C. App. at 280, 390 S.E.2d at 749 (alterations in original omitted) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)), or if a reasonable purchaser "would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." *Dunn v. Borta*, 369 F.3d 421, 427 (4th Cir. 2004). The issue of materiality usually involves a mixed question of law and fact, typically to be decided by a jury. *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). However, materiality may be resolved on a motion to dismiss if no "reasonable jury could find it substantially likely that a reasonable investor would find the fact at issue material in the 'total mix' of information." *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 657 (4th Cir. 2004) (citing *TSC Indus.*, 426 U.S. at 450).

{30}    The court then examines whether Plaintiffs' allegations adequately tie omissions to affirmative statements in order to state a claim under § 56(a)(2). Plaintiffs complain that Harbert failed to disclose the following information before closing:

- the dates of the $1.5 million in loans from Harbert;
- that CF Holding was in default on its loan with Bank of America;
- CF Holding's $500,000.00 vehicle tag expense due soon after closing and CF Holding's inability to pay that expense if the Lance Transport sale was not completed; and
- the inability of one of CF Holding's subsidiaries to make its lease payments.

(Am. Compl. ¶¶ 17, 27, 34, 64.) Plaintiffs allege that the above omissions made the following statements by Harbert misleading:

- that the financial condition of CF Holding was as indicated by the November 2008 financial documents;
- that Harbert had $35 million in committed but uncalled capital to provide equity investments in CF Holding if needed and would support CF Holding over the long haul; and
- that the value of the shares of CF Holding stock was $125 per share, the value attributed to the stock in the Stock Purchase Agreement.

(Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Am. Compl. [hereinafter Opp'n to Mot. to Dismiss] 6.)

{31} Plaintiffs allege that these omissions were material because the information was necessary for them to have an accurate view of the current financial state of CF Holding, and consequently, of the value of the consideration Plaintiffs were to receive pursuant to the Stock Purchase Agreement. (Am. Compl. ¶¶ 34, 64–65.) In addition to these omissions, Plaintiffs further seek to premise liability on Harbert's affirmation of future financial support for CF Holding. (Am. Compl. ¶¶ 37, 40.)

{32} Defendants contend that Plaintiffs have not satisfied the requirements of § 56(a)(2) because they have failed to tie the alleged omissions to any statements which were made misleading by the alleged omissions, that, in any event, some of the alleged omissions were actually disclosed to Plaintiffs, and that the information

Plaintiffs complain was not disclosed is immaterial as a matter of law. (Brief in Supp. 5–6.) The court will first address the alleged omissions and whether Plaintiffs have adequately tied them to any affirmative statement by Harbert that was made false or misleading by the omission, and then will address Harbert's statements as to future support. First, the court addresses whether the stock valuation reflected in the closing documents was a statement to which any omission may be tied.

1. The Stock Valuation at Closing Was Not a "Statement" on which § 56(a)(2) Liability Can Rest

{33} Plaintiffs seek to tie the various omissions of which they complain either to the November 2008 financial documents they were provided, or the valuation placed on CF Holding stock in the Stock Purchase Agreement. However, the value of the stock stated in the Stock Purchase Agreement cannot be fairly considered to be a "statement" by Harbert. Rather, it reflects the agreement reached between the parties to the transaction as to the value to be attributed to the shares of CF Holding stock, as well as the value of other components to comprise the overall sales consideration. This value was a matter of negotiation, as evidenced by the fact that the value given the stock changed over the course of the negotiations. *Compare* (Am. Compl. ¶ 15) *with* (Am. Compl. ¶ 26). Plaintiffs have pointed to no financial statement or warranty provided by Harbert regarding the result or method of any valuation.

2. The Timing of the $1.5 Million in Loans

{34} In their initial Complaint, Plaintiffs first alleged that they were not told of the $1.5 million in loans Harbert made to CF Holding, or that the $1.5 million would be repaid out of the $2.75 million Harbert agreed to put in to CF Holding at closing. (Compl. ¶¶ 17, 26, 37–40.) However, these allegations cannot be squared with the fact that the documents incorporated into the Stock Purchase

Agreement and delivered at or prior to closing disclose both of these facts.[3] (Mot. to Dismiss Ex. A, Ex. O, Ex. C, at 2; Mot. to Dismiss Pls.' Am. Compl. Ex. H, at 6; Opp'n to Mot. to Dismiss 7–8); *see Int'l Harvester Credit Corp. v. Bowman*, 69 N.C. App. 217, 220, 316 S.E.2d 619, 621 (1984) ("A person who executes a written instrument is ordinarily charged with knowledge of its contents.") In their Amended Complaint, Plaintiffs instead allege that they were not informed about the *timing* of the three loans, alleging that the timing was material to Plaintiffs' evaluation of CF Holding's financial state and the value of the consideration they were to receive for the sale of Lance Transport. (Am. Compl. ¶ 32.)

{35} Even if the court accepts that the November financial documents provided to Plaintiffs constitute a "statement" by Harbert of the general financial state of CF Holding as of November, 2008, that statement could not be made misleading by its failure to disclose events in December 2008 and February 2009 which had not yet occurred. *See, e.g., Carlucci v. Han*, 2012 U.S. Dist. LEXIS 110786, at *47 (E.D. Va. 2012) ("the allegation concerning Envion's financial state in April 2012 does not render earlier statements about Carlucci's potential investment return false at the time those statements were made.") Plaintiffs do not point to any portion of the November financial documents which was made misleading by the failure of Harbert to disclose the timing of Harbert's loans, rather making the contention at oral argument that the failure to amend the November financial documents to reflect those loans was misleading. Stated simply, Plaintiffs cannot tie omissions regarding the timing of the loans to the November 2008

---

[3] The Stock Purchase Agreement is specifically referenced in the Amended Complaint. (Am. Compl. ¶ 38). Thus, even though the Stock Purchase Agreement, and the documents attached to and incorporated into it, were provided to the court by Defendants, the court may properly consider those documents without converting the Motion into one for summary judgment. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60–61, 554 S.E.2d 840, 847 (2001) ("when ruling on a Rule12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiffs complaint and to which the complaint specifically refers even though they are presented by the defendant."); *Reese v. City of Charlotte*, 196 N.C. App. 557, 560–61, 676 S.E.2d 493, 495–96 (2009) (Plaintiff specifically referred to an agreement in its complaint but argued that the trial court erred in looking at attachments referred to by the agreement because those attachments were not specifically referred to in the complaint. The Court of Appeals held that the attachments were properly considered by the trial court because the "Agreement specifically refers to each of the attachments," and the "attachments are an integral part of the agreement.")

financial documents, and Plaintiffs have not tied the alleged omissions as to the timing of the loans to any other statement made misleading by that omission. *See In re Union Carbide Class Action Sec. Litig.*, 648 F. Supp. 1322, 1326 (S.D.N.Y. 1986) (Dismissing plaintiffs' claims pursuant to 12(b)(6) because "the plaintiffs herein have failed to identify any statements that were made misleading by reason of any of the alleged omissions. Instead plaintiffs have chosen to assert vaguely that a false and misleading impression was created." (quoting *Ross v. A.H. Robins Co.*, 1978 U.S. Dist. LEXIS 18472 (S.D.N.Y. 1978)); *see also Dirks v. Secs. & Exch. Comm'n*, 463 U.S. 646, 657–58 (1983) (Reaffirming that a duty to disclose "attaches only when a party has legal obligations other than a mere duty to comply with the general antifraud proscriptions in the federal securities laws.") As noted, the $125.00 value given CF Holding's stock in the Stock Purchase Agreement was not a "statement" by Harbert to which the omission could be tied.

{36}     In sum, the court concludes that alleged failures to disclose the timing of the three loans cannot anchor a claim under § 56(a)(2).


### 3.  The Default on the Loan with Bank of America

{37}     Plaintiffs also maintain that they were not informed that CF Holding was in default on its loan with Bank of America immediately before closing. (Am. Compl. ¶ 27.) The statements made by Harbert made no specific affirmative representations as to the state of CF Holding's loan with Bank of America. Plaintiffs must then demonstrate somehow that other statements were rendered misleading by the failure to disclose this fact. *See Krim v. Coastal Physician Grp., Inc.*, 81 F. Supp. 2d 621, 630 (M.D.N.C. 1998).

{38}     It is not clear to what affirmative statement by Harbert Plaintiffs attempt to tie the omission, and considering Plaintiffs' clear awareness of the financial difficulties CF Holding was experiencing, the court has serious doubt whether Plaintiffs could in any event successfully contend that covenant defaults under the lending agreement were material. But, the greater problem Plaintiffs face is that the default was disclosed in the closing documents upon which the

Amended Complaint depends. The Stock Purchase Agreement references the Third Amendment to the loan agreement with Bank of America, and the Third Amendment itself references the prior defaults which the bank was waiving by the amendment.[4] (Mot. to Dismiss Ex. I, at 1.) Plaintiffs cannot simply claim ignorance of this fact. *See Williams v. Williams*, 220 N.C. 806, 809–10, 18 S.E.2d 364, 366 (1942) ("one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was willfully misled or misinformed by the defendant . . . he is held to have signed with full knowledge and assent as to what is therein contained."); *Connelly v. Gen. Med. Corp.*, 880 F. Supp. 1100, 1115 (E.D. Va. 1995) ("the defendants owed no obligation to disclose information that was already in the plaintiff's possession.")

### 4. The Upcoming Vehicle Tag Payment

{39} Harbert contends that, even assuming that Plaintiffs were not specifically aware of the upcoming vehicle tag payments due and any inability CF Holding may have faced before closing in their ability to make them, the information as a matter of law was not material in light of the total mix of

---

[4] At oral argument, the Parties further discussed whether Plaintiffs can make any legitimate argument that they were not aware of the default when Greg Skoog himself signed documents necessary to effectuate the Third Amendment and its forgiveness of the defaults. There are documents which support Defendants' position in that regard, although the court need not reach them to determine the Rule 12(b)(6) motion because the Third Amendment itself demonstrates adequate knowledge, and the Third Amendment was clearly referenced in the documents specifically referred to in the Amended Complaint. More specifically, Exhibit O to the Stock Purchase Agreement is the Secretary Certificate of CF Holding. (Mot. to Dismiss Ex. A, Ex. O.) The Stock Purchase Agreement lists receipt of that document as a precondition to Plaintiffs' obligation to close on the transaction, and Plaintiffs nowhere allege that they failed to receive the Secretary Certificate before closing. (Mot. to Dismiss Ex. A, at 52 § 7.2(c); Mot. to Dismiss Ex. A, at 21 § 2.7(c).) Exhibit C to the Secretary Certificate authorizes CF Holding to enter into the Third Amendment, notes that the Third Amendment is required before the transaction between Lance Transport and CF Holding can close, and states that the Third Amendment is an agreement between CF Holding, Lance Transport, and Bank of America. (Mot. to Dismiss Ex. A, Ex. O, Ex. C, at 4.) The Third Amendment requires Lance Transport to submit a document evidencing its consent to becoming a party to the loan agreement. (Mot. to Dismiss Am. Compl. Ex. I, at 11 § 4(b)(i), (xi).) Greg Skoog, signing as a director of Lance Transport, executed a "Written Consent of the Board of Directors of Lance Transport, Inc." authorizing Lance Transport to enter into the Third Amendment. (Mot. to Dismiss Am. Compl. Ex. J.) Even if Plaintiffs contend that Skoog actually signed this document after closing, it does not excuse Plaintiffs' knowledge of the default through other documents.

information regarding CF Holding's financial difficulties of which Plaintiffs were aware, particularly considering that Plaintiffs were themselves involved in and knowledgeable regarding trucking operations. (Brief in Supp. 13; Mem. of Law in Supp. of Defs.' Mot. to Dismiss 13; Am. Compl. 6–7.) Moreover, Harbert challenges that there is not a statement actually made misleading by Harbert's failure to divulge this information. (Br. in Supp. 13–14.) Plaintiffs again assert the generalized allegation that this "information was necessary for Plaintiffs to have an accurate assessment of the current financial status of CF Holding[]" and that the omitted information made Harbert's representations as to the value of CF Holding misleading. (Am. Compl. ¶¶ 34, 65.)

{40}    The court concludes that Plaintiffs have not adequately alleged that any statement by Harbert was made misleading by its failure to disclose the upcoming vehicle tag payments. There is no allegation that Harbert provided any other information about upcoming obligations or general costs of doing business of CF Holding, and Plaintiffs do not allege that any statement in the November financial documents was made misleading by the omission. *See Schoenhaut v. Am. Sensors, Inc.*, 986 F. Supp. 785, 793 ( S.D.N.Y. 1997) (Finding that the defendant's failure to disclose the details of decreasing sales to one of the defendant's largest customers was, as a matter of law, not a material omission because the Prospectus did not give the current level of sales, predict future sales levels, or suggest that the customer would remain a customer.) Plaintiffs did not request, and Defendants did not provide, any financial statement for the period between November 2008 and closing. Information regarding upcoming tag license payments would not have materially altered the "total mix" of information Plaintiffs received regarding the financial state of CF Holding. Plaintiffs were well aware that CF Holding was experiencing financial difficulty and that it "would require substantial infusions of working capital for it to remain a viable operating entity." (Am. Compl. ¶ 19.) Thus, Plaintiffs were already aware that CF Holding would have difficulty paying its bills coming due in the near future, and that the acquisition of Lance Transport was intended to help mitigate CF Holding's financial difficulties. (Am. Compl. ¶14.)

Their complaint that they would have concluded that even more of an equity infusion would be required than they assumed is not adequate to satisfy their pleading obligation. (Am Compl. ¶¶ 42–43.) And again, Plaintiffs cannot satisfy their pleading standard by seeking to tie omissions to the statement of stock value in the final agreement.

### 5. The Subsidiary's Inability to Make its Lease Payment

{41}    The final omission alleged by Plaintiffs is the failure of Harbert to inform Plaintiffs of CF Holding's subsidiary's inability to make payments on a lease of the building out of which the subsidiary operated. (Am. Compl. ¶¶ 33–34.) Plaintiffs again, however, fail to point to any statement by Harbert which was made misleading by this omission; Plaintiffs do not allege that they were provided *any* information about CF Holding's subsidiaries or that Harbert took steps to conceal such information from Plaintiffs. *See United States v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000) (explaining the difference between simple nondisclosure and concealment, and noting that usually only concealment will give rise to an action under common law fraud); *Krim*, 81 F. Supp. 2d at 632 (M.D.N.C. 1998) (holding that Plaintiff failed to establish the scienter element of a Rule 10b-5 action because it did "not allege that Defendants concealed or misstated" anything).

### 6. Harbert's Promises of Future Financial Support

{42}    In claims of actual fraud under North Carolina law, "[a]n unfulfilled promise is not actionable fraud . . . unless the promisor had no intention of carrying it out at the time of the promise." *McKinnon v. CV Indus., Inc.*, 713 S.E.2d 495, 503 (N.C. Ct. App. 2011). This same concept has been applied to claims of securities fraud in federal cases. *See Ferland v. Orange Groves of Fla., Inc.*, 377 F. Supp. 690, 705–06 (M.D. Fla. 1974) (For claims brought pursuant to either § 12(a)(2) or Rule 10b-5, "[a] promissory representation . . . should only be considered a misrepresentation of fact where the evidence shows that the promise was made without the intent to perform").

{43}     Plaintiffs nevertheless allege that Harbert made two distinct promises of support that are actionable because they were false or misleading: (1) that Harbert would provide CF Holding with approximately $3 million at closing; and (2) that "Harbert had $35 million in committed but uncalled capital to provide additional equity investments into CF Holding if needed," and that Harbert would support CF Holding "over the long haul." (Am. Compl. ¶¶ 21, 36.) There is no allegation that Harbert failed to comply with their promise to contribute approximately $3 million at closing. Instead, Plaintiffs place primary significance on Harbert's promises of future support and that limiting its post-closing contribution to the single further $500,000.00 contribution before bankruptcy was not "consistent with Harbert's pre-closing representations of future financial support for CF Holding." (Am. Compl. ¶¶ 37, 52.) Plaintiffs do not, however, allege that Harbert had no intention of providing future support to CF Holding at the time those statements were made. Neither have Plaintiffs alleged that Harbert actually committed to provide a defined amount of additional capital to CF Holding after the closing, or that Harbert committed to providing endless amounts of capital in an effort to keep CF Holding afloat. The references to future support for CF Holding were not worded as guarantees. *See Raab v. Gen. Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993) ("projections of future performance not worded as guarantees are generally not actionable under the federal securities laws" (quoting *Krim v. Banctexas Grp., Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993)); *see also Marsh Grp. v. Prime Retail, Inc.*, 46 Fed. App'x 140, 146 (4th Cir. 2002) (affirming dismissal on 12(b)(6) of plaintiffs' Rule 10b-5 claim based on defendants' repeated statements of their "commitment" to paying dividends; finding that statements were immaterial as a matter of law because defendants' statements were not worded as guarantees and lacked "the factual specificity necessary to make them actionable . . .").

{44}     In sum, Plaintiffs have failed to allege any material misstatements of fact by Harbert adequate to state a claim under § 56(a)(2). As to that claim, Harbert's Motion is GRANTED.

ii. <u>Harbert's Liability Under Section 56(a)(1)</u>

{45}    Plaintiffs further allege that Harbert's overall actions violated § 8(1) and § 8(3) of the NCSA.  (Am. Compl. ¶¶ 62–63.)  The relevant portions of § 8 provide:

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
>
> (1)  To employ any device, scheme, or artifice to defraud, . . . [or]
>
> (3)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

N.C. GEN. STAT. § 78A-8(1), (3) (2013).

{46}    Section 8 does not by its terms provide for civil liability for violations of its provisions.  Instead, Subsections (1) and (3) of § 8 are made actionable by § 56(a)(1).  To establish a claim under § 56(a)(1) for violations of § 8(1) or (3), a plaintiff must plead that (1) defendant is a seller or offeror of a security who either (a) "employ[ed] any device, scheme, or artifice to defraud", or (b) "engage[d] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person"; (2) defendant acted with scienter; and (3) plaintiff justifiably relied.  *NNN Durham Office Portfolio 1*, 2013 NCBC LEXIS 11, at *63.  And, because subsections (1) and (3) of § 8 sound in fraud, a plaintiff claiming violations of those subsections must do so with particularity sufficient to satisfy Rule 9(b).  *Id.* at *62.  Similar to how § 56(a)(2) parallels § 12(a)(2) of the 1933 Act, § 8 parallels Rule 10b-5 of the federal Securities Exchange Act, and "[c]ases construing the federal rule are instructive when examining our statute." *State v. Davidson*, 131 N.C. App. 276, 282–83, 506 S.E.2d 743, 748 (1998).  The court has already concluded that Plaintiffs have sufficiently alleged that Harbert is an offeror or seller of the CF Holding stock Plaintiffs purchased.

{47}    Plaintiffs allege that Harbert sought to induce Plaintiffs to sell Lance Transport to CF Holding because they knew of the truly dire financial condition of CF Holding and wished to mitigate their loss of investment in CF Holding.  (Am.

Compl. ¶¶ 48, 57–58.) To induce Plaintiffs, Harbert allegedly misrepresented the true financial state of CF Holding and the value of the consideration Plaintiffs were to receive upon the acquisition of Lance Transport. (Am. Compl. ¶¶ 45, 48–49.) Plaintiffs allege that the failure of Harbert to disclose the timing of its loans to CF Holding, CF Holding's default on its loan with Bank of America, the quickly-approaching due date of the vehicle tag expenses, and the inability of CF Holding's subsidiary to make lease payments are part of this overall scheme. Plaintiffs also complain that, while they were aware that CF Holding was experiencing financial difficulty, Harbert made assurances that it would continue to support CF Holding in the future to allay those concerns and induce Plaintiffs to sell Lance Transport. (Opp'n to Mot. to Dismiss 14–15.)

{48} When promoting a § 56(a)(1) claim, in addition to Harbert's scienter, Plaintiffs must allege actual and reasonable reliance on actions or inactions taken by Harbert. Plaintiffs have pled that Harbert "intended to provide selective information to the Plaintiffs in an effort to mislead them into a false belief as to the value of the consideration they would receive," and "intended to deceive and/or mislead Plaintiffs as to the true financial state of CF Holding" (Am. Comp. ¶¶ 29, 48), and that "[b]ut for the incomplete financial information provided to Plaintiffs concerning the financial status of CF Holding, and Harbert's repeated assurances that it would support CF Holding over the long haul," Plaintiffs would not have entered into the transaction. (Am. Compl. ¶ 37.)

{49} The court believes there are significant questions which Plaintiffs may not ultimately be able to overcome, specifically whether they reasonably relied on Harbert when they failed to request further financial information once they admittedly became aware of the financial hurdles with which CF Holding was faced. Discovery may well further present problems in Plaintiffs being able to claim ignorance of facts that were expressly disclosed or reasonably inferable from documents they signed at closing. And there are questions whether, in light of the overall mix of information, Plaintiffs reasonably relied on Harbert's promise of future financial support without requesting more in the nature of specific

commitments, and whether statements Harbert did make rise above the type of "soft," "puffing" statements that federal courts often find not actionable. *See, e.g.*, *Raab*, 4 F.3d at 289–90 (4th Cir. 1993).

{50} But, the court concludes that these inquiries are in the nature of a more factually-intense analysis than is appropriate in the context of a Rule 12(b)(6) motion. For that reason, the court concludes that Plaintiffs have made allegations which allow them to escape dismissal of their § 56(a)(1) claim. It has done so somewhat reluctantly in the face of the generalized allegations which blur the distinctions between liability based on an overall scheme to defraud and liability which rests only on alleged misstatements and omissions. *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005) ("Courts have held that a plaintiff may not cast claims of misrepresentations as claims under Rule 10b-5(a) and (c) and thus evade the pleading requirements imposed in misrepresentation cases." (citing *Schnell v. Conseco, Inc.*, 43 F. Supp. 2d 438, 447–48 (S.D.N.Y. 1999)); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 2006 U.S. Dist. LEXIS 16612, at *68–71 (S.D. Ohio 2006) (dismissing plaintiffs' Rule 10b-5(a) and (c) claims pursuant to federal 12(b)(6) because the plaintiffs' theory "merely repeats the allegations made in support of Plaintiffs' misrepresentation and omission claim under Rule 10b-5(b)," alleging only that the defendants issued misleading financial statements and failed to disclose "related party transactions" (citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005)). The court acknowledges that it is possible for one set of facts to support liability under both § 56(a)(1) and § 56(a)(2), but if the court were applying a more strict Rule 12(b)(6) standard such as that now followed by the federal courts or the case was now before the court pursuant to a Rule 56 motion, the court would on the record to date likely conclude that the Amended Complaint should be dismissed because Plaintiffs have failed to allege conduct beyond misrepresentations to support scheme liability. *See In re Alstom*, 406 F. Supp. 2d at 475–76 (dismissing the complaint on 12(b)(6) because it "fails to allege that there

was a scheme to defraud that went beyond the misrepresentations themselves" (citing *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 505 (S.D.N.Y. 2005)).[5]

C. Harbert's Secondary Liability Under Section 56(c)

{51}    Alternatively, Plaintiffs allege that if Harbert is not primarily liable as the seller or offeror of the stock, then Harbert should be held liable as a "control person" of CF Holding pursuant to § 56(c).  The court has determined that Plaintiffs adequately allege that Harbert is itself an offeror or seller.  Even if not, as the majority shareholder of CF Holding, Harbert is likely a "control person" under § 56(c).  *See Waterman v. Alta Verde Indus., Inc.*, 643 F. Supp. 797, 809 (E.D.N.C. 1986).  For the same reasons the court did not dismiss claims against Harbert under § 56(a)(1), Defendants' Motion is DENIED so far as it seeks to dismiss Plaintiffs' claim pursuant to § 56(c)(1) which is pursued in the alternative.


        IT IS SO ORDERED, this the 25th day of March, 2013.

---

[5] Although the issue was not raised by the Parties, the court assumes that subsequent motion practice may further address statute of limitations issues.  Section 56(f) of the NCSA provides that "[n]o person may sue under this section for any other violation of this Chapter more than three years after the person discovers facts constituting the violation . . . ."  N.C. GEN. STAT. § 78A-56(f) (2013).  Plaintiffs allege that they learned of CF Holding's "true dire financial situation" and its limited working capital "shortly after closing," which occurred on February 12, 2009.  (Am. Compl. ¶¶ 46–47.)  The lawsuit was not commenced until March 5, 2012.